```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,    )
                             )
                             )    Criminal NO.
v.                           )    10-10388-DPW
                             )
JON R. LATORELLA and         )
JAMES C. FIELDS              )
                             )
          Defendants.        )
```

## MEMORANDUM AND ORDER REGARDING RESTITUTION
June 27, 2017

Remaining to be resolved in this case is the untidy and doggedly contested problem of restitution under the Mandatory Victims Restitution Act. I established at sentencing losses totaling $6,901,599.63 for the fraud and deceit charges that provide the crimes of conviction. This amount presumptively provides a base line from which a restitutionary order can be ordered.

Under the Act, restitution is mandatory without consideration of the defendant's financial circumstances; moreover, the availability of third party compensation to victims is disregarded as to those victims whose restitutionary claims are established by a preponderance of the evidence. 18 U.S.C. § 3665(f)(1)(A)-(B).

Establishing the overall loss, however, only begins the process of fashioning appropriate restitutionary order. The daunting issues here have been (I) the problem of proof as to causation regarding those victims who have actually sought restitution and (II) the manageability of a distribution plan for those identifiable victims who have established entitlement to restitution. Meanwhile, (A) a related bankruptcy proceeding and (B) a parallel Securities Exchange Commission civil enforcement action have undertaken separately to make certain victims whole and otherwise to deprive the defendants of ill-gotten gains and govern their conduct in the future. A manageable and efficient plan must take those proceedings into consideration.

I.

Over the period of time the problem of restitution has been under advisement, several putative victims have proven unwilling or unable to support the discrete claims fully to the Government. As a consequence, the Government has narrowed the identifiable victims for whom it presses restitutionary relief. I am satisfied the Government's screening of those who have submitted claims is well founded and will limit restitution to those — except for the defendants' former corporate vehicle,

LocatePlus Holdings Corporation — whose separate restitutionary claims the Government has also pressed.

For their part, each of the two defendants — who I now formally conclude are jointly and severally liable for the restitutionary losses established because those losses were reasonably foreseeable to each defendant and caused by one or both of the coconspirator codefendants during and in furtherance of their conspiracy together — have mounted a range of challenges to aspects of restitution orders that have been under consideration while the question of restitution has remained open. I have largely rejected those challenges as to the restitution order now sought by the Government.

In order to balance the competing considerations and after full consideration of the parties' contentions, I have decided to impose a restitution order that triages among proven victims the order of payment and the manner of distribution. *Id.* at § 3665(f)(2)

Briefly stated, payment(s) in full must first be paid to the individual victim Randy Jurecka in the amount of $76,799.58.

Second, following the satisfaction of Mr. Jurecka's claim, payment may be paid to the Special Situations Fund in an amount not to exceed $4,871,034.60.

I conclude no other claimants should be addressed in the restitution order for this criminal case.[1]

II.

Having identified the claimants entitled to restitution and the related amounts of restitution to be provided to those claimants, I turn to the practical questions of manageability. The manageability challenge is presented in two basic aspects.

First, the defendants are as a practical matter now unable to pay any significant amount of the restitution amount I have ordered and, moreover, only a portion is likely to be paid by either of them over time under any conceivable periodic payment plan reflective of their actual financial capacities in their declining years.

Second, as to the identifiable victims entitled to the Special Situations Fund restitution — the reported 430 separate

---

[1] The Government, expressing uncertainty about the availability of prejudgment interest as a legal matter — and perhaps more importantly in the circumstances of this case — as a practical matter, declined to press for such an award as restitution. This appears prudent and I accept the Government's position. I note, however, that as a legal matter prejudgment interest is available as part of a restitution order designed to make victims whole by compensating them for the lost time value caused by delay in receiving restitution of the core underlying loss. *See, e.g., United States* v. *Alexander*, 679 F.3d 721, 731 (8th Cir. 2012); *United States* v. *Fumo*, 655 F.3d 288, 321 (3d Cir. 2011); *United States* v. *Qurashi*, 634 F.3d 699, 702-05 (2d Cir. 2011).

investors in Fund entities to whom any restitutionary amount paid to the Fund would flow through — a periodic payment plan subject to frequent payouts is likely to result in considerable transaction costs both for the Probation Office in overseeing the plan and to the managers of the Fund, who may in turn seek in some fashion to shift those costs directly or indirectly to individual investors.  Any appropriate periodic payment plan must take those factors into consideration.

Having evaluated these considerations, I have chosen, as noted above, to sequence periodic payments according to a payment plan to be developed by the Probation Office and refined by me, first to the most vulnerable claimant, Mr. Jurecka, and then to Special Situations Fund entities.  With respect to Special Situations Fund, I will direct — subject to such refinements as may later appear advisable — payments to be made on a periodic basis and that such payments shall be deposited in the court's registry until an amount of at least $43,000 has accumulated at which point distributions may be made to Special Situations Fund.  Such distributions, however, can be made only after Special Situations Fund has submitted under seal to the Probation Office, an identification of every investor in the Fund that the Fund deems entitled to such distributions, indicating the amount and basis for each such projected

5

distribution and the costs or fees, if any, the Fund seeks to impose on investors for such distribution.

I make this special order regarding accumulation of restitution payments before periodic distribution to the Special Situations Fund in order to assure that there will be a critical mass to the distribution sufficient to justify associated transaction costs.[2]  This plan of distribution is also designed to ensure that the distributions will flow through to the underlying investors in the Special Situations Fund entities in circumstances where one Fund has ceased to be a registered Investment Company.  *See* In the Matter of *Special Situations Fund III, L.P.*, (United States Securities and Exchange Commission, Investment Company Act of 1940 Release No. 29768, August 24, 2009) and the managers of the entities have declined to identify the underlying investors who are the intended recipients of any distributions.

Should the Fund fail to provide the Probation Office with the required information within 60 days of request, the monies

---

[2] It should be noted that given the refusal of administrators of the Fund entities to disclose the identities and the aliquot shares in the investments giving rise to restitution, no breakdown by investment can be made at this point.  The $43,000 distribution level is arrived at by assuming equal investments for all underlying investor victims; this provides that payouts may be undertaken whenever the hypothetical average investor is entitled to at least a $100.00 partial payment.

available for distribution shall be escheat to the general Treasury of the United States on the basis of constructive abandonment of entitlement to a restitution distribution by the Fund.

III.

Finally, I have chosen not to order restitution losses sought directly on behalf of LocatePlus, an entity with which the defendants were affiliated.  This determination is in recognition of the facts (A) that losses to the LocatePlus estate from the activity of the defendants are within the ambit of an ongoing bankruptcy proceeding, *In Re: LocatePlus Holdings Corporation, et al.*, Case No. 11-15791 (Bank. D. Mass.), the purpose of which is to marshal assets and provide a fair distribution among claimants and (B) that yet another matter, a civil enforcement proceeding prosecuted by the *Securities and Exchange Commission* v. *LocatePlus Holdings Corporation, James C. Fields, and Jon Latorella*, Civil Action No. 10-11751 (D. Mass.) illustrates how multiple overlapping proceedings in which the interested parties' activities may be considered *inter sese* have the potential not only to resolve claims among such parties in a more practical and tailored manner, but also to introduce unwarranted complexity to the assessment of restitution.

A.

The respective responsibilities of LocatePlus, the defendant Fields and the defendant Latorella, for losses claimed directly by LocatePlus, are best resolved between those parties in the bankruptcy proceeding. That proceeding provides a vehicle for first party determinations among them.[3] Embedded in the dispute among these three affiliated parties are a number of knotty legal issues, including the issue whether a release issued to the defendant Fields means that he is not obligated to pay anything back.

I recognize that the bankruptcy proceeding is an intensely practical affair in which the Trustee, exercising his business judgment will be "focused," as the LocatePlus Trustee phrased the matter in a submission to the Bankruptcy Court, "on maximizing the value of the estate" with a view toward fashioning "a comprehensive Claims reconciliation process" in an

---

[3] I note that in contrast to first party disputes among LocatePlus, Latorella and Fields, Special Situations Fund entities have filed third-party claims in the bankruptcy proceeding. While the order of restitution is not reduced by the existence of this other potential source of compensation for the loss, *see* 18 U.S.C. § 3664(f)(1)(B), if the Special Situation Fund claimants in the bankruptcy proceeding actually do receive compensation from the bankruptcy estate for the loss, their restitution award will be reduced and payments will be redirected to the bankruptcy estate. *See generally* 18 U.S.C. § 3664(j).

effort to create "distributable value." <u>Plan Trustee's *Ex Parte* Motion for an Order Further Extending the Claims Objection Bar Date</u>, Case No. 11-15791 (Bank. D. Mass. Dkt. No. 950, Oct. 14, 2015 at 3). That is precisely the venue where the particulars of the claims of LocatePlus for losses directly experienced by activity of its affiliates should be thrashed out. The extended travel of this restitution inquiry in this court has demonstrated that the entitlement of LocatePlus to restitution in its own name counsels that the determination of complex issues of fact and law not burden the sentencing process any longer. *See generally* 18 U.S.C. § 3663A(c)(3)(B).

B.

The parallel SEC enforcement action against LocatePlus will be resolved today without further complicating the mechanisms for imposing financial obligations on the defendants Fields and Latorella. The parties are in agreement that a fine in that proceeding would be inappropriate. Moreover, I find that the SEC's prayer for disgorgement, to the degree that such a remedy is available in a civil enforcement action,[4] would be duplicative

---

[4] It bears noting that the Supreme Court earlier this month expressly reserved the question "whether courts possess authority to order disgorgement in SEC enforcement proceedings." *Kokesh* v. *Securities and Exchange Commission*, 2017 WL 2407471 at *5 n. 3 (U.S. June 5, 2017).

9

at best and potentially disruptive of the restitution order in this case, to the degree that the restitution order in the criminal case is burdened by separate collection efforts from the defendants in another proceeding.

While I will order that the defendants, whose past professional activities — as evidenced in the crimes of conviction — present the ongoing danger of future repetition, not be permitted to participate in certain activities in the securities markets, I recognize that this may further restrict their abilities to fund their restitution obligations. Nevertheless, it appears clear that it is not in the public interest to permit the defendants, even after the passage of some more limited debarment period, to be set loose again in positions of trust or responsibility related to the securities markets.

Of course, should changed circumstances require modification of the injunctive decrees incorporated in the Final Judgments in the SEC enforcement action, the parties are by terms authorized to petition the court for modification. But at this point, I find final judgments in the SEC enforcement action without financial provisions provide an adequate and appropriate adjunct to the criminal proceeding which I have tailored to

avoid disrupting the restitution ordered in this criminal proceeding.

IV.

For the reasons set forth more fully above, the judgments respectively as to the defendants Fields and Latorella, shall be amended jointly and severally to provide restitution[5] to Randy Jurecka in the amount of $76,799.58 and to Special Situations Fund entities in an amount not to exceed $4,871,034.60 in accordance with the procedures outlined herein.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT

---

[5] As I alerted the parties at the most recent hearing on the question of restitution, the Supreme Court earlier this term ruled that a party in a deferred restitution case must file a separate notice of appeal from any subsequently entered restitution order. *Manrique* v. *United States*, 137 S. Ct. 1266 (2017). Thus, it would appear that any party seeking review of the restitution order embodied in the respective amended judgments regarding the defendants here must file a separate notice of appeal and, in particular, the notices of appeal earlier filed by both parties with respect to the defendant Fields's judgment of conviction must be supplemented by a new and independent notice of appeal if either party seeks review of the restitution decision.